## (February 15, 1967)

■ UNADILLA NATIONAL BANK, Respondent, v. H. J. McQUEER, Appellant, et al., Defendant.— AULISI, J. Defendant H. J. McQueer appeals from an order and judgment granting summary judgment under CPLR 3213 to plaintiff in this action brought to collect on a note made by appellant and negotiated to plaintiff. On March 17, 1966 McQueer purchased a truck and milk cooling tank from the defendant Johnson's Garage, Inc., for the sum of $10,698. He signed a note for this amount on one of plaintiff's printed forms supplied by the garage. Rex Hinman, general manager of Johnson's Garage, wrote in the terms of payment in his own hand before McQueer signed. Johnson's Garage, Inc., was the payee and there was a reference to the sale between Johnson's Garage and McQueer typed on the note. Affidavits supplied by McQueer, Hinman and one Lyle Bright, who was present at the transaction, state that the note was drawn to become due in five days from date which would have been on March 22, 1966. The note, as yet unpaid, was on March 28, 1966 negotiated by the payee to plaintiff bank which paid the face amount over to the payee and the check was deposited in the Johnson's Garage account in an Oneonta bank. Plaintiff's employees assert in their affidavits that the note was received, accepted and posted in the regular course of business and that when it was received it was payable 45 days from date; that the bank had a policy of not accepting overdue notes; and that no one at the bank, at least not anyone who had handled the note, inserted the figure 4 before the figure 5. McQueer on April 1, 1966, allegedly unaware that Johnson's Garage had negotiated the note to plaintiff, paid to the garage the $10,698 for the equipment which he had purchased by personal check. This was also taken and deposited by Johnson's Garage in its account at the Oneonta bank. In his affidavit McQueer states that he demanded the return of the note at the time of his payment but that Mr. Johnson said it was locked up in the garage vault and would be returned to him by mail. Despite McQueer's calls the note

was never returned — it having been negotiated to the plaintiff three days previously. On May 1, 1966, the due date of the note based on 45 days, the bank demanded payment by the maker, McQueer, and upon his refusal this action was commenced. On the record before us, we are constrained to disagree with the Special Term that plaintiff was entitled to summary judgment. The basis of its decision was that even if there had been a material alteration of the instrument it was not so manifest as to excite suspicion and the instrument being complete and regular on its face it was accepted by the bank without notice of any material alteration and all other requisites having been met, the bank was a holder in due course. Upon the facts presented by defendant, we must assume that there was an alteration on the note from 5 to 45 days somewhere along the line. If the alteration was effected before the transfer to plaintiff, the bank might still be deemed a holder in due course. A holder in due course is one who takes an instrument, " without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." (Uniform Commercial Code, § 3–302, subd. [1], par. [c].) Where, as here, there is an altered instrument, the statute provides as follows: " A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he may enforce it as completed." (Uniform Commercial Code, § 3–407, subd. [3]; see, also, § 3–304, subd. [1], par. [a].) So in this case, where the note was overdue as originally drafted, the bank may claim status as a holder in due course and enforce the note if the note came to it in such condition that alteration was not noticeable. Special Term assumed that the bank took the note after the alteration was made. We can not accept this assumption as a fact beyond dispute. All the persons who have executed affidavits here deny any knowledge of the alteration, but the crucial question still remains — who made the alteration. When there are defenses such as payment or that the paper is overdue, the burden is upon the party claiming the rights of a holder in due course to prove his status as such (Uniform Commerical Code, § 3–307, subd. [3]). We do not think the burden has been met where there remains, among others, the question as to the identity of the one who made the alteration. If it was not accomplished prior to the bank's acceptance then, as to the bank's reduced status as a mere holder, questions remain as to knowledge and authority surrounding the alteration. We, therefore, are not now ready to accept the bank's contention that even as a mere holder it would have a right to payment from McQueer because the latter made payment negligently to a party who was not a holder of the note (see *Third Nat. Bank* v. *Bowman-Spring,* 50 App. Div. 66; *Industrial Bank of Commerce* v. *Hayse,* 191 Misc. 658; *Mundet Cork Corp.* v. *Grupp,* 154 Misc. 798; 42 N. Y. Jur., Negotiable Instruments, § 582; 11 Am. Jur., 2d, Bills and Notes, § 989; Ann.: Commercial Paper-Transferee-Defenses, 44 ALR 2d 172–183). At any rate, whatever factual questions may arise it is our view that the bank must prove to the satisfaction of a trier of the facts that it took the note in its altered form in good faith before judgment may be entered in its favor as a holder in due course. We also leave open for trial the question whether the alteration was noticeable or not. Judgment and order reversed, on the law and the facts, and motion denied, with costs to appellant. Gibson, P. J., Herlihy, Reynolds, Aulisi and Staley, Jr., JJ., concur in a memorandum decision by Aulisi, J.